IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY MULLEN,<br><br>   Plaintiff,<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>   Defendant. | 2:14-cv-00917 |

## MEMORANDUM OPINION AND ORDER OF COURT

Before the Court is DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO ASSESS COSTS (ECF No. 34) filed by Defendant Norfolk Southern Railway Company ("Norfolk Southern").[1] Plaintiff Harry Mullen opposes the motion. The issues have been fully briefed and well-argued by the parties in their briefs (ECF Nos. 35, 41, 43), and the factual record has been fully-developed via their Concise Statements of Material Facts ("CSMF"), appendices, exhibits, and Responsive Statement of Facts ("RSOF") (ECF Nos. 36, 37, 40, 42). The Court heard oral argument on May 14, 2015. Accordingly, the motion is ripe for disposition.

### I.  Background

#### A. Administrative Proceedings

Plaintiff Harry Mullen alleges that Norfolk Southern wrongfully terminated his employment after he had protested violations of safety regulations and raised concerns with his supervisors while working as a trackman assigned to the Engineering Department, Pittsburgh

---

1. To be clear, Norfolk Southern's motion seeks (1) the dismissal of (rather than judgment on) Mullen's claim because this Court is without subject-matter jurisdiction; (2) the entry of summary judgment in its favor based on preclusion principles, as an alternative to dismissal; and/or (3) an assessment and award of costs, as an alternative to summary judgment.

Division at Conway Yard. Following his termination on February 14, 2011, Mullen filed a "whistleblower" claim with the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") on April 28, 2011 against Norfolk Southern under the employee protection provisions of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109.[2]

After Mullen filed his complaint, the Secretary of Labor, acting through the Regional Administrator for OSHA, Region III, in Philadelphia, Pennsylvania, conducted an investigation and issued written findings on September 30, 2011 (the "Secretary's Findings"). OSHA found that, on February 13, 2011, Mullen and his supervisor disagreed about the need for a foreman to work with the gang trackmen who were lubricating switches in the Conway Yard and that Mullen refused to assume the role when offered the position. OSHA further found that Mullen raised his concerns at a safety meeting the following day during which Mullen became argumentative and insubordinate. As a result of his behavior, Norfolk Southern suspended and ultimately terminated Mullen from his employment. After Mullen acknowledged that his conduct was inappropriate, Norfolk Southern agreed to convert his discipline to a three and one-half month suspension and to reinstate his employment. According to OSHA, "there [was] no evidence that [Mullen's] discipline was motivated in any way by his protected activity, but rather because of his disruptive behavior and insubordination." Def.'s App'x Ex. 2, ECF No. 37-2 at 3.

On October 27, 2011, Mullen filed objections to the Secretary's Findings and requested a hearing before the Office of Administrative Law Judges. On November 11, 201, Mullen's case was assigned to the Honorable Richard A. Morgan, Administrative Law Judge (the "ALJ"), who

---

2. The record is not entirely clear regarding the date on which Mullen filed his claim with OSHA: a letter from Mullen's then-lawyer to OSHA, with the subject line "Complaint of Harry Mullen v. Norfolk Southern Railway Co under the Federal Safety Act of 2007, 49 U.S.C. § 20109," is dated March 11, 2011; however, the Secretary's Findings state that Mullen filed his complaint on April 28, 2011. *Compare* Defs.' App'x Ex. 1 at 1, ECF No. 37-1 *with* Def.'s App'x Ex. 2 at 1, ECF No. 37-2.

issued a Notice of Hearing and Pre-Hearing Order the same day. Notably, on November 24, 2011, the 210-day period following the filing of Mullen's complaint elapsed (assuming the April 28, 2011 date is correct) at which time he could have "br[ought] an original action at law or equity for de novo review in the appropriate district court of the United States" as the Secretary had yet issued a final decision within the statutory timeframe. 49 U.S.C.A. § 20109(d)(3). Mullen did not file a civil action at that time.

The parties instead advanced to discovery in the ALJ proceeding, which included multiple depositions and the exchange of documentary evidence. Following discovery, the parties participated in a four-day hearing before the ALJ in Pittsburgh, Pennsylvania. Mullen was represented by two attorneys during the hearing, which lasted from June 26, 2012 through June 29, 2012 and resulted in a 914-page transcript. Mullen presented seven witnesses as part of his case-in-chief and had the opportunity to cross-examine each of the seven witnesses called by Norfolk Southern. After the hearing, both parties filed post-trial briefs with the ALJ.

On April 30, 2013, the ALJ issued a thorough, nineteen page single-spaced Decision and Order Dismissing the Complaint in which he made credibility determinations, findings of fact, and conclusions of law adverse to Mullen. The ALJ weighed the competing testimony and found that Mullen used profanity at the February 14, 2011 safety meeting ("Fuck safety"), continued to vent his frustrations outside the meeting by insulting his co-workers ("You got these two fucking idiots out here graphiting switches"), and then stepped toward a supervisor, pointed a finger in his face, and accused him of dishonesty ("You're lying, you're a liar"). Def.'s App'x Ex. 8 at 9, ECF No. 37-8. The ALJ also found and ruled that Norfolk Southern had established by clear and convincing evidence that it removed Mullen from service and then imposed discipline "not because of his safety concerns but rather because of the grossly inappropriate manner in which

3

he raised them." *Id.* at 18. Accordingly, the ALJ entered an order dismissing the complaint and advised Mullen of his appellate rights.

On May 10, 2013, Mullen timely filed a Petition for Review with the Administrative Review Board (the "ARB"). The ARB entered an order setting a briefing schedule six days later, directing Mullen to file a supporting legal brief on or before June 10, 2013. Mullen did not file a supporting legal brief with the ARB. Instead, on June 6, 2013, Millen filed with the ARB a Notice of Intention to File Original Action in United States District Court (the "Notice of Intent"). Mullen did not, however, file a district court complaint at that time.

On June 13, 2013, the ARB issued an Order to Show Cause in which in stated, in relevant part, as follows: "Accordingly, we order the parties to **SHOW CAUSE** no later than **June 24, 2013**, why the Board should not dismiss Mullen's claim pursuant to 29 C.F.R. § 1982.114. Should the parties fail to timely reply to this Order, the Board may dismiss this claim without further notice." Def.'s App'x Ex. 12, at 2, ECF No. 37-12 (emphasis in original). Mullen did not respond to the Order to Show Cause.[3]

On July 9, 2013, the ARB issued its "Final Decision and Order Dismissing Complaint." Def.'s App'x Ex. 13, ECF No. 37-13. In its Final Decision and Order, the ARB recounted the procedural history of the matter and acknowledged that "[t]he Secretary of Labor has delegated to the Board her authority to issue final agency decision." *Id.* at 2. The ARB also reiterated that "[t]he Board cautioned the parties that should they fail to timely respond to the Board's Order that '[it] may dismiss the claim without further notice.'" *Id.* The ARB then concluded: "Accordingly, in accordance with 29 C.F.R. § 1982.114 and Mullen's notification of his intent to

---

3. According to the ARB, "Norfolk Southern responded averring that it did not object to the dismissal with prejudice of the Complainant's complaint, but that it reserved the right 'to contend in federal district court that [Mullen's] federal court complaint is barred by the doctrines of claim or issue preclusion, waiver, estoppel, failure to exhaust remedies, or any other applicable legal doctrine.'" Def.'s App'x Ex. 13, at 2-3, ECF No. 37-13

4

proceed in district court and given his failure to respond to the Board's Order to Show Cause, we **DISMISS** Mullen's complaint.  **SO ORDERED**." Def.'s App'x Ex. 13, at 3, ECF No. 37-13 (emphasis in original).  This suit followed.

### B. District Court Proceedings

Mullen commenced this action by filing a Complaint in the United States District Court for the Eastern District of Pennsylvania on October 30, 2013—113 days after the issuance of the Secretary's Final Decision and Order Dismissing Complaint—which was assigned to the Honorable Michael M. Baylson.  In his Complaint, Mullen alleges that "he was illegally dismissed by NSR in retaliation for having protested unsafe acts in violation of Federal rail safety regulations, refused to commit the acts himself, and confronted managers as to their violations of these regulations in a company safety meeting, where such problems are supposed to be raised." Pl.'s Compl. at 1, ECF No. 1.  To be sure, the Complaint raises the exact same alleged FRSA violation(s) that the parties fully litigated at the administrative level.

On February 7, 2014, Norfolk Southern filed a Motion to Dismiss for Lack of Jurisdiction and Improper Venue, or in the Alternative, Transfer Venue.  Mullen opposed the motion(s).  Judge Baylson denied the motion to dismiss but granted the alternative relief requested in an April 8, 2014 Memorandum and Order, transferring this action to the United States District Court for the Western District of Pennsylvania.  (ECF Nos. 11, 12).  On May 6, 2014, Norfolk Southern moved for certification of the April 8, 2014 Order of Court for an interlocutory appeal and for a stay pending the appeal.  Judge Baylson denied the motion in a June 10, 2014 Memorandum and Order.  (ECF Nos. 19, 20).  The case was transferred to this Court on July 10, 2014.

This Court held a Case Management Conference on October 7, 2014 at which Norfolk Southern raised and the undersigned discussed with counsel whether it had subject-matter jurisdiction. With the parties consent, the Court ultimately ordered briefing and heard oral argument on this issue.

After careful consideration of the motion and the filings in support and opposition thereto, the Court concludes that it does not have subject-matter jurisdiction. Thus, for the reasons that follow, the Court will grant in part and deny in part Defendant's motion and dismiss the Complaint.

## II.     Legal Standard[4]

A motion to dismiss pursuant to Rule 12(b)(1) contends that the district court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Such a motion questions the court's "very power to hear the case" and is considered either "facial," which attacks the complaint on its face, or "factual," which attacks subject matter jurisdiction as a matter of fact. *Mortensen v. First. Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Petruska v. Gannon Univ.*, 462 F.3d 294, 302, n.3 (3d Cir. 2006).

"Facial attacks . . . contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Common Cause v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (*quoting Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). The court's review is limited to "the allegations on the face of the complaint . . . and any

---

4.  Because the Court only reaches the preliminary question of whether it has subject-matter jurisdiction and concludes that it does not, the undersigned will treat Defendant's filing as a motion to dismiss and apply a Rule 12(b)(1) standard. *See CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also* 10A THE LATE CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2713 (3d ed. Suppl. 2014) ("[A]lthough some courts have entered summary judgment on jurisdictional grounds, the general rule is that it is improper for a district court to enter a judgment under Rule 56 for defendant because of a lack of jurisdiction . . . . The rationale for this conclusion, although somewhat metaphysical, is sound. If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action.") (internal citations omitted).

documents referenced in the complaint, viewed in the light most favorable to the plaintiff." *Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x. 285, 288 (3d Cir. 2008) (citing *Mortensen*, 549 F.2d at 891; *Turicentro, S.A. v. Am. Airlines, Inc.*, 303 F.3d 293, 300 (3d Cir. 2002)). A complaint under facial attack may be properly dismissed "only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

By comparison, "a factual challenge contends that a substantive defect prevents the court from having subject-matter jurisdiction over a dispute, regardless of what allegations are made in the complaint." *U.S. Airline Pilots Ass'n v. U.S. Airways, Inc.*, 2:13-CV-0627, 2013 WL 5466838, at *2 (W.D. Pa. Sept. 30, 2013) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). Similarly, "if the attack is factual, no presumptive truthfulness attaches to the complaint's allegations and the court is free to weigh the evidence, including evidence outside of the complaint, to determine whether it has the inherent power to hear the case." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### III.     Discussion

In the United States District Court for the Eastern District of Pennsylvania, Judge Baylson identified two issues: (1) "whether the ARB's July 9, [2013] Order constituted a final decision under the FRSA" and (2) "whether a final decision from the Secretary, issued more than 210 days after the filing of the administrative complaint but before the employee initiated a federal action, prevents a district court from conducting a de novo review." *Mullen v. Norfolk S. Ry. Co.*, No. CIV. 13-6348, 2014 WL 1370119, at *5 (E.D. Pa. Apr. 8, 2014). Answering the first question, Judge Baylson concluded "that the July 9, 2013 Order is best viewed as a routine

and non-substantive closing of the administrative proceedings in anticipation of Plaintiff's pursuit of his remedies in federal court." *Id.* at *6. Judge Baylson declined to reach the second question, although he noted that the "issue arose in a recent decision by another court in [the Eastern District of Pennsylvania]." *Id.* at 7 (citing *Glista v. Norfolk S. Ry. Co.*, No. CIV.A. 13-04668, 2014 WL 1123374 (E.D. Pa. Mar. 21, 2014)). Norfolk Southern now asks this Court to reconsider these questions.

The Court ordinarily would not revisit an issue already decided in a case by a different judge of coordinate jurisdiction. In fact, "'[t]he law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation.'" *In re W.R. Grace & Co.*, 591 F.3d 164, 174 (3d Cir. 2009) (quoting *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)). And it applies "'as much to the decisions of a coordinate court in the same case as to a court's own decisions.'" *Pub. Interest Research Grp. of New Jersey, Inc.*, 123 F.3d at 116 (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988)); *see also In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) ("'A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.'") (quoting *Christianson*, 486 U.S. at 816).

At the same time, this judicially-created doctrine "'is not a fixed rule that prevents a federal court from determining the question of its own subject matter jurisdiction in a given case.'" *In re W.R. Grace & Co.*, 591 F.3d at 174 (quoting *Baca v. King*, 92 F.3d 1031, 1035 (10th Cir. 1996)); *see also Pub. Interest Research Grp. of New Jersey, Inc.*, 123 F.3d at 116

("The law of the case doctrine does not limit a federal court's power; rather, it directs its exercise of discretion.") (citing *Arizona v. California,* 460 U.S. 605, 619 (1983)). As our court of appeals has reiterated:

> The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law. Though that obligation may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority.

*Council Tree Commc'ns, Inc. v. F.C.C.*, 503 F.3d 284, 292 (3d Cir. 2007) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 515 (4th Cir. 2003)). Indeed, "federal courts have a duty to examine their subject matter jurisdiction at all stages of the litigation." *Rose v. City of Allentown*, 211 F. App'x 133, 138 (3d Cir. 2007) (citing *United States Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388-89 (3d Cir. 2002)). This Court will, therefore, independently address the issue of subject matter jurisdiction of this case.

### A. Jurisdiction

Congress amended FRSA in 2007 to "establish[ ] employee protection provisions for railroad carrier employees who engage in whistleblowing activities pertaining to railroad safety or security (or, in circumstances covered by the statutes, employees perceived to have engaged or to be about to engage in protected activity)." Procedures for the Handling of Retaliation Complaints Under the National Transit Systems Security Act and the Federal Railroad Safety Act, 75 Fed. Reg. 53522-01, 53522 (August 31, 2010) (codified at 29 C.F.R. pt. 1982). Among its provisions, FRSA now provides that "[a] railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee" for engaging in

certain protected activity enumerated in the statute such as "reporting, in good faith, a hazardous safety or security condition." 49 U.S.C. § 20109(b)(1)(A); *see also id.* § 20109(a)(1)(C).

"The 2007 amendments to FRSA also specifically eliminated the requirement that FRSA complaints proceed through the RLA arbitration process, instead transferring authority to investigate and adjudicate such complaints to the Secretary of Labor." *Norfolk S. Ry. Co. v. Solis*, 915 F. Supp. 2d 32, 38 (D.D.C. 2013) (citing Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, § 1521(c), 1221 Stat. 266, 446 (2007)); *see also Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 156 (3d Cir. 2013). Under the newly-amended FRSA, "[a]n employee who alleges discharge, discipline, or other discrimination in violation of [the statute]" may bring an enforcement action against the railroad carrier "by filing a complaint with the Secretary of Labor." 49 U.S.C. § 20109 (d))(1).

The procedures for adjudicating complaints under FRSA are detailed in regulations promulgated by the Department of Labor, which set forth a three stage process: an investigation by OSHA, which issues the Secretary's Findings; followed by a hearing before and decision by an ALJ; and then appellate review by the ARB. At each stage, the decision and order of the tribunal can become a final, non-appealable order of the Secretary of Labor unless a party exercises his or her right to timely appeal to the next administrative body.

Moreover, under the regulations, an employee claiming that he or she had been retaliated against by an employer must file a complaint with OSHA within 180 days of the alleged violation. 29 C.F.R. § 1982.103. OSHA then conducts an administrative investigation, 29 C.F.R. § 1982.104, after which it issues written findings and a preliminary order, 29 C.F.R. § 1982.105. The parties may thereafter file "any objections and/or a request for a hearing on the record within 30 days of receipt of the findings and preliminary order;" if no party timely

objects, "the findings or preliminary order will become the final decision of the Secretary, not subject to judicial review." 29 C.F.R. §§ 1982.106(a)-(b).

However, if a party objects to OSHA's findings or preliminary order, "the Chief Administrative Law Judge will promptly assign the case to a judge who will notify the parties, by certified mail, of the day, time, and place of hearing," which is to "commence expeditiously, except upon a showing of good cause or unless otherwise agreed to by the parties." 29 C.F.R. § 1982.107(b). Following the hearing, the ALJ shall issue a decision that "will contain appropriate findings, conclusions, and an order." 29 C.F.R. § 1982.109(a). The ALJ's decision will then "become the final order of the Secretary unless . . . a petition for review is timely filed with the ARB and the ARB accepts the petition for review." 29 C.F.R. § 1982.110(a).

If the ARB accepts the petition for review, its decision will constitute the final order of the Secretary of Labor, which has delegated the authority to act and issue final decisions under the employee protection provisions of the FRSA. *Id.* The ARB represents the highest level of review within the Department of Labor, and the regulations provide for no further administrative proceedings following its entry of a final order.

The United States Courts of Appeals retain exclusive jurisdiction to review an appeal from a final order of the Department of Labor issued under this statutory and regulatory scheme. *See* 49 U.S.C.A. § 20109(d)(4); 29 C.F.R. § 1982.112. An appeal must occur "[w]ithin 60 days after the issuance of a final order under §§ 1982.109 and 1982.110" and may be filed "in the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation." 29 C.F.R. § 1982.112.

FRSA includes a limited grant of jurisdiction to federal district courts in § 20109(d)(3), known as the "kick-out" provision. *See Lynch v. Union Pac. R. Co.*, No. 3:13-CV-2701-L, 2014

11

WL 2519206 (N.D. Tex. June 4, 2014); *see also* 75 Fed. Reg. 53522-01, 53526. Section 20109(d)(3) provides that, with respect to an enforcement action brought under § 20109(d)(1),

> if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

*See also* 29 C.F.R. § 1982.114(a).[5] The Department of Labor's regulations further provide that "[f]ifteen days in advance of filing a complaint in Federal court, a complainant must file with the Assistant Secretary, the ALJ, or the ARB, depending upon where the proceeding is pending, a notice of his or her intention to file such complaint." 29 C.F.R. § 1982.114(b). With this historical background, the Court now turns to the pending motion(s).

### 1. Final Decision

"The Supreme Court has specified that administrative orders are final when they mark the 'consummation' of the agency's decision-making process, and when 'rights or obligations have been determined' or when 'legal consequences will flow' from the decision." *Yusupov v. Attorney Gen. of U.S.*, 518 F.3d 185, 195 (3d Cir. 2008) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Applying these considerations, the Court concludes that the ARB's Final Decision and Order was in fact a final decision of the Secretary.

---

5. The legislative history of the bill indicates that "[t]he Conference substitute adopt[ed] a modified version of the Senate language" regarding "Railroad employee protections" for which there was no comparable House provision: "It modifies the railroad carrier employee whistleblower provisions and expands the protected acts of employees . . . . The language also provides for de novo review of a complaint in Federal District Court if the Department of Labor does not timely issue an order related to the complaint." H.R. CONF. REP. NO. 110-259, 348 (2007), *reprinted in* 2007 U.S.C.C.A.N. 119, 181; *see also Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 n.3 (3d Cir. 2013) (detailing the legislative history of the bill) (citing *Santiago v. Metro–North Commuter R.R. Co.*, ARB No. 10–147, slip op. at 12–14 (July 25, 2012) (decision and order of remand), *available at* http://www.oalj.dol.gov/PUBLIC/ARB/DECISIONS/ARB_DECISIONS/FRS/10_147.FRSP.PDF; *Norfolk S. Ry. Co. v. Solis*, 915 F. Supp. 2d 32, 43-44 (D.D.C. 2013)).

The ARB's July 9, 2013 Final Decision and Order had the legal effect of any other dismissal order: it ended the administrative review process and left the ARB with nothing else to decide. The ARB's Final Decision and Order also determined Mullen's rights with regard to further pursuit of his administrative claim—*i.e.*, that if not timely appealed, he could not further pursue his FRSA complaint. Similarly, the ARB's Final Decision and Order reiterated its earlier admonishment that failure to respond to its order to show cause may result in dismissal, which occurred in part because Mullen did not timely reply.

Moreover, there is no basis for the Court to reinterpret an administrative action of the Secretary expressly designated as a final decision to be something else; speculation is not among the relevant considerations. The Final Decision and Order says nothing of an "administrative closing." It also does not mention that its dismissal was a routine and non-substantive closing of the administrative proceeding. Rather, the ARB's Final Decision and Order expressly recognizes the Secretary's delegation of authority to the ARB to issue final agency decisions under the FRSA. And the ARB did so in its July 9, 2013 filing. Accordingly, the Court will not second-guess the Secretary's designation of its own order and will recognize the Final Decision and Order as such.

### 2. De Novo Review

Under Mullen's reading of the statute, a complainant may (fully) litigate a whistleblower claim at the administrative level, obtain an adverse decision from the ALJ, file an appeal to the ARB followed by a notice of intent to file an original action, ignore the ARB's briefing schedule and Order to Show Cause, and then bring suit for de novo review in a federal district court months after the ARB issued its "Final Decision and Order Dismissing Complaint," all of which is consistent with Plaintiff's view of FRSA: "[t]hat the Plaintiff gets two bites out of the apple."

Arg. Tr. at 32-33. From its perspective, Norfolk Southern argues that this sort of procedural posturing "would completely undermine the finality of decisions reached through the DOL adjudicative process" and that Mullen offers no limiting principle that would prevent a litigant from seeking de novo review years after the Secretary disposed of a claim. Def's Br. at 5, ECF No. 35.

At least one district court has weighed in on the precise issue before this Court and agreed with Mullen's interpretation of FRSA. *See Glista*, 2014 WL 1123374, at *1.[6] In *Glista*, the plaintiffs brought suit under FRSA, after which OSHA conducted an investigation and determined that there was probable cause to believe that Norfolk Southern unlawfully terminated them in retaliation for reporting work-related injuries and seeking medical care. *Id.* at *1. The parties both objected to OSHA's findings and appealed its decision to an ALJ. Before a hearing was held, the parties agreed to stay the proceedings and mediate the dispute. *Id.* Plaintiff later filed with the ALJ a notice of intention to file an original action in a federal district court, and the ALJ issued an order to show cause why the plaintiffs' claims should not be dismissed. Plaintiffs never responded to that order, and the ALJ dismissed their complaint with prejudice on July 16, 2013.[7] On August 12, 2013, the plaintiffs filed suit in the United States District Court for the Eastern District of Pennsylvania., which was assigned to the Honorable Thomas Newman O'Neill Jr. Judge O'Neill ultimately concluded that § 20109(d)(3) "does not prevent de novo review where the Secretary renders a final decision 210 days after an employee filed the

---

6. Other district courts have also rejected Norfolk Southern's alternative argument(s), holding that FRSA complainants had not waived or were not estopped from (re)-litigating a whistleblower retaliation action. *See Lynch v. Union Pac. R. Co.*, 24 F. Supp. 3d 597, 599-602 (N.D. Tex. 2014); *Gunderson v. BNSF Ry. Co.*, 29 F. Supp. 3d 1259, 1261-64 (D. Minn. 2014); *Pfeifer v. Union Pac. R. Co.*, No. 12-CV-2485-JAR-JPO, 2014 WL 2573326, at **3-5 (D. Kan. June 9, 2014.)

7. Glista, his co-plaintiff, and Mullen were all represented by the same lawyer at the administrative level. Counsel for Plaintiff who appeared before this Court on two occasions did not represent Mullen at the administrative level.

administrative complaint but prior to the employee initiating a federal suit." *Mullen*, 2014 WL 1370119, at *7 (citing *Glista*, 2014 WL 1123374, at *3).

In reaching this result, the *Glista* Court outlined three reasons for its decision. First, the court found the plain meaning of the kick-out provision clear, and therefore, it declined to infer a clause into the statute or defer to the Department of Labor's commentary on its regulations:

> It is the Secretary's position that complainants may not initiate an action in Federal court after the Secretary issues a final decision, even if the date of the final decision is more than 210 days after the filing of the complaint. The purpose of the "kick-out" provisions is to aid the complainant in receiving a prompt decision. That goal is not implicated in a situation where the complainant already has received a final decision from the Secretary. In addition, permitting the complainant to file a new case in district court in such circumstances could conflict with the parties' rights to seek judicial review of the Secretary's final decision in the court of appeals.

*See Glista*, 2014 WL 1123374, at *3 (citing Procedures for the Handling of Retaliation Complaints Under the National Transit Systems Security Act and the Federal Railroad Safety Act, 75 Fed. Reg. 53522-01, 53526 (August 31, 2010) (codified at 29 C.F.R. pt. 1982)). As the *Glista* Court reasoned, "[i]f Congress had intended to deny a plaintiff de novo review by the federal district court in the event that a final decision was reached after the 210 day period had expired such an exception would be explicit in this portion of the statute." *Glista*, 2014 WL 1123374, at *3. Second, the *Glista* Court focused on the absence of any merits-based decision in that case in rejecting Defendant's argument "that permitting de novo review in this case would create incongruity in the case law." *Id.* at *5. To the *Glista* Court, "each of the[ ] scenarios [presented by Defendant] describes circumstances wherein final administrative decisions are based upon an opportunity to evaluate the merits of the claims *or a claimant's attempt to avoid the administrative review process, neither of which is the case here.*" *Id.* (emphasis added). Third, (and relatedly) the *Glista* Court found that "[its] de novo review of plaintiffs' claim does

not imperil administrative finality because the ALJ's dismissal order was the result of only plaintiffs' failure to respond after filing their Notice of Intent rather than the ALJ's evaluation of the merits of their claims." *Id.* at * 6. Accordingly, the *Glista* Court "[p]rioritize[d] the interest of administrative fairness over a rigid interpretation of the technical requirements of the statute and permit plaintiffs to obtain de novo review pursuant to the FRSA kick-out provision." *Id.*

This Court respectfully disagrees with its colleague from the Eastern District of Pennsylvania. Under the *Glista* Court's rationale, a FRSA complainant always has the right to file a de novo action in federal district court irrespective of what occurred at the administrative level so long as the Secretary did not issue a "final decision" within 210 days after the administrative complaint had been filed. Section 20109(d)(3) of Title 49 does not, however, include an unlimited right to bring suit; rather, it states an "employee may bring an original action at law or equity for de novo review in the appropriate district court" if the Secretary "*has not* issued a final decision within 210 days after the filing of the complaint." This limitation has practical significance: the plaintiff may bring a de novo action at any point after the 210-day interim period and until the Secretary issues a final decision. Nowhere in the statute did Congress authorize a de novo action so long as the Secretary *did not* issue a final decision within 210 days. To be sure, FRSA only includes a limited grant of jurisdiction to federal district courts, which must be jealously guarded.

The Court also finds that Mullen's reading of the statute undermines that limited grant of jurisdiction, the statutory framework and regulatory scheme of FRSA and ignores the Secretary's commentary on its rules as well as the legislative history—all of which the undersigned may consider. As the Court of Appeals for the Third Circuit has explained:

> It is well-settled that "[t]he role of the courts in interpreting a statute is to give effect to Congress's intent." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d

16

> Cir. 2001). "When interpreting statutes or regulations, the first step is to determine whether the language at issue has a plain and unambiguous meaning." *Dobrek v. Phelan*, 419 F.3d 259, 263 (3d Cir. 2005). "Because it is presumed the Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute." *Rosenberg*, 274 F.3d at 141. "[T]he plain meaning of statutory language is often illuminated by considering not only the particular statutory language at issue, but also the structure of the section in which the key language is found, the design of the statute as a whole and its object . . . ." *Alaka v. Attorney General*, 456 F.3d 88, 104 (3d Cir. 2006) (internal quotation marks omitted); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("a statute is to be read as a whole . . . since the meaning of statutory language, plain or not, depends on context"); *M.A. ex rel. E.S. v. State–Operated Sch. Dist. of Newark*, 344 F.3d 335, 348 (3d Cir. 2003) (holding that it would be a mistake to "squint [ ] myopically" at the phrase in question and interpret it in isolation rather than in the context of the "text and structure" of the statute as a whole). Where the statutory language, on examination of "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole" is plain and unambiguous, further inquiry is not required. *Rosenberg*, 274 F.3d at 141.

*Register v. PNC Fin. Servs. Grp., Inc.*, 477 F.3d 56, 67 (3d Cir. 2007). Moreover, our court of appeals has recently instructed:

> Ordinarily, we look to the text of the statute, rather than the legislative history, to interpret a statute or determine legislative intent as an aid to interpretation. *See Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *In re Visteon Corp.,* 612 F.3d 210, 220 (3d Cir. 2010) ("It is for Congress, not the courts, to enact legislation. When courts disregard the language Congress has used in an unambiguous statute, they amend or repeal that which Congress enacted into law."); *First Merchs. Acceptance Corp. v. J.C. Bradford & Co.,* 198 F.3d 394, 402 (3d Cir. 1999). However, this rule of statutory construction is not an inviolable commandment that we must blindly enforce regardless of surrounding circumstances or the practical results of rigidly applying the text to a given situation. Thus, we have made exceptions in rare cases in which "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *First Merchs.,* 198 F.3d at 402 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982)). "In such situations, 'those intentions must be controlling.'" *Id.*

*Thorpe v. Borough of Thorpe*, 770 F.3d 255, 263 (3d Cir. 2014). "A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts

17

into an harmonious whole." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (citations and internal quotation marks omitted).

Here, the statutory framework, regulatory scheme, the Secretary's commentary on its rules, and the Conference Report, when taken together, demonstrate that a private right of action brought under FRSA was intended to be fully resolved through the Department of Labor's administrative process unless the Secretary did not timely issue an order related to a complaint. Moreover, the framework is not an exhaustion requirement; it instead sets forth a comprehensive scheme for the full adjudication of an employee's claim: an investigation by OSHA, which issues the Secretary's Findings; followed by a hearing before and a decision by an ALJ; and then an appeal to the ARB, with further review by the circuit courts of appeals. It also does not permit—and it certainly was not intended to allow—a plaintiff an indeterminate "second bite of the apple" in a federal district court simply because 210 days has passed, which is the interpretation Mullen urges this Court to adopt. Mullen's reading of the statute is particularly troubling where, as here, a plaintiff receives an unfavorable (yet merits-based) decision from an ALJ, appeals to the ARB, ignores a show cause order, obtains a dismissal order and attempts to relitigate his claim as if nothing occurred at the administrative level. The statute could not have been intended to permit this outlandish result. In sum, this Court agrees with Defendant that the 210-day kick-out provision was designed to protect a plaintiff from administrative delay rather than to grant a claimant an unlimited right to bring a duplicative suit in a federal district court even after an authorized final decision has been issued by the Secretary.

### B. Remedy

Because the Court concludes that it lacks subject-matter jurisdiction, it will not and, in fact, cannot reach the merits of Norfolk Southern's preclusion claim. *See In re Orthopedic*

*"Bone Screw" Products Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) ("If a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits. It has no authority to do so."). Nor can the Court order the dismissal of this action with prejudice as Norfolk Southern requests. *See Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577, 580-81 (3d Cir. 2007) ("[W]e conclude that the District Court was correct to dismiss this case for lack of subject-matter jurisdiction. However, it should not have done so *with* prejudice. Where a district court lacks subject-matter jurisdiction, its disposition of such a case will . . . be *without* prejudice.") (emphasis and ellipses in original) (citations omitted). Accordingly, the Court will dismiss Plaintiff's Complaint without prejudice.

### IV. Conclusion

For the reasons hereinabove stated, the Court will grant in part and deny in part Norfolk Southern's motion. An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HARRY MULLEN,** | )<br>)<br>) |
| Plaintiff, | )<br>) 2:14-cv-00917 |
| v. | )<br>) |
| **NORFOLK SOUTHERN RAILWAY COMPANY**, | )<br>)<br>)<br>) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this 29th day of May, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO ASSESS COSTS (ECF No. 34) filed by Defendant Norfolk Southern Railway Company is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. The Clerk shall docket this case as **CLOSED**.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: **James H. Kaster**
Email: kaster@nka.com
**David E. Schlesinger**
Email: schlesinger@nka.com

**Robert S. Hawkins**
Email: robert.hawkins@bipc.com
**Joseph P. Sirbak, II**
Email: joseph.sirbak@bipc.com
**Kathleen J. Goldman**
Email: kathleen.goldman@bipc.com

(via CM/ECF)